### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| Scrub Daddy, Inc.,<br>1700 Suckle Hwy.<br>Pennsauken, NJ 08110<br><br>                          Plaintiff,<br><br>        v.<br><br>Smilyeez LLC<br>4304 Parkland Court<br>Rockville, Maryland, 20853<br>                         Defendant. | Civil Action No.  1:24-cv-165<br><br><br>**COMPLAINT** |

Plaintiff, Scrub Daddy, Inc., by and through its attorneys, alleges as follows:

### NATURE OF ACTION

1.     This is an action for violation of Sections 32 and 43 (a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125; for violations of the common law of the State of Maryland arising from unfair competition; and trademark and service mark infringement and for violations of the Patent Act, 35 U.S.C. § 271.

### THE PARTIES

2.     Scrub Daddy, Inc. ("Scrub Daddy" or "Plaintiff") is a corporation organized and existing under the laws of Pennsylvania.

3.     Upon information and belief, Smilyeez LLC ("Smilyeez" or "Defendant"), is a corporation organized under the laws of Maryland with a principal place of business listed as 4304 Parkland Court, Rockville, Maryland, 20853.

## JURISDICTION AND VENUE

4.    This Court has original jurisdiction over Plaintiff's federal claims and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §§ 1121 and 1225.  In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.  Furthermore, upon information and belief, this Court also has diversity jurisdiction over this civil action, as diversity of citizenship exists amongst the parties and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00).

5.    This Court has personal jurisdiction over Defendant because Defendant has transacted business, regularly does business, and supplies goods in the State of Maryland and in this District and should reasonably expect their acts to have legal consequences within the State of Maryland and this District.  Additionally, as alleged herein, this civil action arises out of Defendant's marketing, offering, and sale of Defendant's goods in the State of Maryland and in this District.

6.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the ongoing events giving rise to the claims occurred in this judicial district, and Defendant is subject to personal jurisdiction within this judicial district.

## BACKGROUND FACTS

7.    Scrub Daddy is a cleaning product company best known for its eponymous cleaning sponges in the shape of a smiley face.

8.    The company, originally named Innovative Manufacturing Services Inc., was founded by renowned entrepreneur and inventor Aaron C. Krause ("Krause") in 2008 following the sale of his highly successful buffing pad company to 3M.  Krause initially launched a grassroots marketing campaign by performing live product demonstrations at local retail stores and promoting the product on QVC.

2

9.     In 2012, Scrub Daddy gained nationwide prominence when Krause appeared on the ABC reality show *Shark Tank*.  Krause's years of experience pitching the brand was apparent. Thanks in part to his larger-than-life personality, Scrub Daddy sold 42,000 sponges in less than 7 minutes the day after the episode aired.

10.     By 2017, Scrub Daddy generated more revenue than any *Shark Tank* product to date and regularly has sales of its product which exceed $100 million per year around the world. It is widely considered to be the most successful business to appear on *Shark Tank* in its 14-year history and is a leader in the cleaning products industry.

11.     The Scrub Daddy brand was originally used to promote its cleaning sponges.  It has since diversified its product line, which currently boasts more than 20 products in the cleaning products space, including dual-sided sponges, scouring pads, sink organizers, soap dispensers, household erasers, and dish wands.

12.     Scrub Daddy values its intellectual property and is committed to enforcing its intellectual property rights.  It owns seven issued patents and an extensive trademark portfolio in the U.S. and abroad.

13.     Scrub Daddy advertises its goods under several federally registered trademarks, including the marks DADDY (Registration No. 5,365,748), SCRUB DADDY (Registration Nos. 4,022,758 and 6,180,288), DISH DADDY (Registration No. 6,791,046), ERASER DADDY (Registration No. 5,042,910), ERASER DADDY 10X (Registration No. 6,043,763), DADDY CADDY (Registration No. 5,427,469), BBQ DADDY (Registration No. 6,739,793), SAD DADDY (Registration No. 6,772,854), BIG DADDY (Registration No. 4,886,992), MOP DADDY (Registration No. 7,055,746), SPONGE DADDY (Registration No. 4,721,566), SCOUR DADDY (Registration No. 5,302,323), SCREEN DADDY (Registration No. 4,985,254), and SOAP DADDY (Registration No. 5,789,281) (collectively the "DADDY-

formative Marks").

14.    Scrub Daddy has continuously used the DADDY-formative Marks in commerce since at least as early as 2007.  Its significant investment in marketplace awareness has resulted in a family of distinctive DADDY-formative Marks successfully associated with its various household cleaning supplies.  From the company's inception, the DADDY-formative Marks have been associated with Krause and synonymous with the Scrub Daddy brand.  **Exhibit A**.

15.    Scrub Daddy owns a federal trademark registration before the United States Patent and Trademark Office ("USPTO") under Registration No 4,677,237 for the unique and distinctive shape of its sponge (the "Smile Face Sponge").

16.    Scrub Daddy has continuously used the Smile Face Sponge in commerce since at least as early as 2011, entitling its mark to a presumption of incontestability.  Its significant investment in marketplace awareness has resulted in widespread consumer recognition of its distinctive sponge shape.  Since the adoption of this design shape, the Smile Face Sponge has been synonymous with the Scrub Daddy brand.  **Exhibit B**.

17.    Scrub Daddy also incorporates its Smile Face Sponge as a design element in many of its marks (the "Smile Face Logo").

18.    Scrub Daddy owns a federal trademark registration before the United States Patent and Trademark Office ("USPTO") under Registration No 4,902,053 for its unique and distinctive Smile Face Logo (the "Smile Face Logo").

19.    Scrub Daddy has continuously used the Smile Face Logo in commerce since at least as early as May 1, 2013, entitling its mark to a presumption of incontestability.  Its significant investment in marketplace awareness has resulted in widespread consumer recognition of its distinctive design.

20.    Scrub Daddy owns a design patent for the ornamental design of its Smile Face

Sponge under United States Design Patent Number D690,892 (the "D'892 Patent").

21.    Scrub Daddy commonly uses bubble lettering and the distinctive and bold color combinations of yellow and blue on its product packaging.  This color scheme unmistakably points to Scrub Daddy, as it is applied to every single product in Scrub Daddy's product family.  **Exhibit C**.

**Scrub Daddy's Creation and Use of its DADDY-formative Marks, the Smile Face Sponge, and the Smile Face Logo**

22.    Scrub Daddy has offered its cleaning supply products since at least as early as 2007.  It was among the first companies to use a highly engineered polymer foam sponge that is firm when cold, soft when hot, and features a smile face design.

23.    Scrub Daddy began using the DADDY-formative Marks since at least as early as 2007 when it adopted the SCRUB DADDY mark.  The distinctive and dominant word "DADDY" was adopted due to Krause's role as a father and the household dishwasher.

24.    Scrub Daddy began using the Smile Face Sponge since at least as early as 2011.  The distinctive design shape was adopted as an eye-grabbing feature to distinguish it from traditional rectangular sponges.

25.    In addition to the symbolic emphasis of the term "DADDY" in the DADDY-formative Marks, Scrub Daddy frequently emphasizes the term "DADDY" throughout its advertising, blogs, and media coverage highlighting its products.  **Exhibit A**.

26.    Scrub Daddy advertises its goods to consumers through its website, its various social media pages, its blog, and through extensive media coverage by national publications and television programs.  Scrub Daddy has invested millions of dollars to date in building brand awareness and reaching consumers.

27.    Because of its extensive advertising and symbolic emphasis on the term,

"DADDY" has become a conceptually strong mark in the cleaning products space.

28.     Scrub Daddy's consistent messaging and strategic use of social media and data analytics have resulted in impressive growth.  The publication GrowthScribe reported that Scrub Daddy boasts well over $100 million in annual sales and has witnessed a substantial growth rate of approximately 120% annually in recent years.  **Exhibit D.**

29.     Scrub Daddy has further protected its brand investment by registering its DADDY-formative Marks with the USPTO for use in association with cleaning products.  The registration certificates are attached as **Exhibit E**.  At least five of the DADDY-formative Marks have been used exclusively and continuously for over five years and have become incontestable.

30.     Scrub Daddy has further protected its brand investment by registering its distinctive Smile Face Logo with the USPTO for use in association with cleaning products.  The registration certificate is attached as **Exhibit F**.  The Smile Face Logo has been used exclusively and continuously for over five years and has become incontestable.

31.     Scrub Daddy has further protected its brand investment by registering its Smile Face Sponge trade dress with the USPTO for use in association with sponges.  The registration certificate is attached as **Exhibit G**.  The Smile Face Sponge has been used exclusively and continuously for over five years and has become incontestable.

**Scrub Daddy's Asserted Design Patent**

32.     The USPTO duly and legally issued the D'892 Patent, entitled Dishwashing and scrubbing tool, on October 1, 2013, and names Krause as the inventor.  Attached as **Exhibit H** is a true and correct copy of the D'892 Patent.

33.     The D'892 patent claims the ornamental design as shown and described in the patent, including the front top right perspective, front elevational, top plan, left side elevational, and bottom plan view of a "dishwashing and scrubbing tool."

6

34.     Scrub Daddy is the assignee of the entire right, title, and interest in the D'892 Patent.

35.     Scrub Daddy holds an exclusive license under the D'892 Patent, including the right to sublicense, make, have made, use, develop, have developed, offer for sale, and sell and import products covered by the D'892 Patent and the right to assert, and defend, and maintain, and enforce the D'892 Patent.

**Smilyeez's Unlawful Infringing Use of the DADDY-Formative Marks, the Smile Face Logo, and the Smile Face Sponge**

36.     Smilyeez is a company that sells cleaning products and home improvement products.

37.     Smilyeez has chosen to adopt the marks (1) DADDY HANDLE in connection with a dish wand; and (2) SCRUB MOJI in connection with cleaning sponges (collectively, the "Infringing Goods").

38.     Smilyeez has chosen to employ a smile face in its logo with ridged outer edges that are highly similar to Scrub Daddy's Smile Face Logo.

39.     Smilyeez has chosen to employ a blue and yellow color scheme in its logo that is highly similar to Scrub Daddy's blue and yellow color scheme.

40.     Smilyeez has chosen to (1) adopt the use of a round, smile face scrubbing sponge that purports to have the same qualities and materials as the Smile Face Sponge; (2) uses lettering and color scheme on its advertising and marketing materials which closely resembles Scrub Daddy's advertising and marketing materials; and (3) uses photos of the Smile Face Sponge in its advertising and marketing materials (collectively, the "Infringing Trade Dress").

41.     Smilyeez purposefully seeks to blur the lines of distinction between the two

7

brands by adopting the Infringing Trade Dress.



| Scrub Daddy | Smilyeez |
|---|---|
|  | |
|  |  |



42. Smilyeez has chosen to use the SCRUB MOJI mark as the name the Infringing

Trade Dress.

43.     Smilyeez's DADDY HANDLE dish wand was developed and marketed to be used in connection with the Smile Face Sponge.  Literally, the name Smilyeez was adopted to denote the dish wand's ease of use for operating with the Smile Face Sponge.  **Exhibit I**.

44.     Further, Smilyeez's use of the DADDY HANDLE and SCRUB MOJI marks in association with its Infringing Goods necessitates this action because its conduct is misleading and confusing to consumers and has caused and will continue to cause serious irreparable harm to Scrub Daddy.

45.      Smilyeez registered the domain smilyeez.com on or about April 9, 2020.  Upon information and belief, Smilyeez knew of Scrub Daddy's preexisting rights prior to launching its website.

46.     Smilyeez contacted Scrub Daddy to become an official Scrub Daddy distributor on or about January 14, 2022.

47.     Scrub Daddy rejected that offer.

48.     Smilyeez began offering for sale products entitled "Daddy Handle Soap Dispensing Handle For the Scrub Daddy Sponge" at least as early as October 16, 2021. **Exhibit J.**

49.     Smilyeez filed an application for registration of the DADDY HANDLE mark before the USPTO (Ser. No. 97/751,301) on or about January 12, 2023.  This application is granted a federal priority date of January 12, 2023.  **Exhibit K**.

50.     Scrub Daddy sent a demand letter to Smileyeez regarding its unauthorized use of the DADDY HANDLE mark and confusingly similar product packaging on or about March 12, 2023.

51.     Smilyeez refused to cease its unauthorized use of the mark DADDY HANDLE or change the confusingly similar product packaging ("Smilyeez's Response") on or about March

23, 2023.  The USPTO refused registration of the DADDY HANDLE mark on the grounds of a likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. §1052(d) with several DADDY-formative Marks on or about October 10, 2023.

52.    Despite Scrub Daddy's objection to the use and registration of the mark and the USPTO's rejection of its application, Smilyeez continues to use the mark DADDY HANDLE.

53.    Smilyeez filed an application for registration of the SCRUB MOJI mark before the USPTO (Ser. No. 98/036,420) on or about June 9, 2023 (the "SCRUB MOJI mark").  This application is granted a federal priority date of June 9, 2023.  **Exhibit L.**

54.    Scrub Daddy has requested a 90-day extension of time to file a Notice of Opposition against the SCRUB MOJI trademark with the Trademark Trial and Appeal Board.

55.    Despite Scrub Daddy's numerous efforts to dissuade Smilyeez from adopting confusingly similar marks and resolve these issues amicably, Smilyeez has only become more brazen in its attempts to blur the lines of distinction between the two brands by recently adopting the SCRUB MOJI mark in connection with the Infringing Trade Dress.

**Smilyeez's Deceptive Marketing and Promotion of the Infringing Goods\**

56.    The deceptive marketing and promotion of the Infringing Goods and Infringing Trade Dress has led consumers to believe that the goods are being offered by or are associated with Scrub Daddy.

57.    The DADDY HANDLE mark is designed and marketed to not only work with the Smile Face Sponge but also to take advantage of Scrub Daddy's goodwill in the marketplace and to mislead consumers into believing that the DADDY HANDLE mark is affiliated with Scrub Daddy or originates from Scrub Daddy.  Examples of misleading statements and omissions contained in advertisements promoting the DADDY HANDLE are depicted in **Exhibit M** for DADDY HANDLE.

58.     Scrub Daddy has already suffered loss in revenue that correlates with Smilyeez's Infringing Goods and Infringing Trade Dress.  It is highly probable this confusion will continue to Scrub Daddy's financial detriment and to the detriment of the consumers who use and benefit from its goods.

59.     Smilyeez's adoption of the DADDY HANDLE mark, the SCRUB MOJI mark, and the Infringing Trade Dress exemplifies exceptional willful conduct, as it had a legal duty to avoid infringing the existing rights of Scrub Daddy and to avoid confusion in market channels where Scrub Daddy has labored to successfully cultivate consumer goodwill and awareness for its DADDY-formative Marks and Smile Face Trade Dress among consumers.

60.     As a company that attempted to partner with Scrub Daddy, Smilyeez would have conducted due diligence clearance searches and been aware of Scrub Daddy's preexisting trademark rights.

61.     Smilyeez has and continues to make, use, sell, and offer for sale a SCRUB MOJI Sponge in the United States.  As shown below, the Infringing Smile Face Sponge is virtually identical to the design claimed in the D'892 Patent.

| D'892 | SCRUB MOJI Sponge |
|---|---|
|  |  |



62.     An ordinary observer or purchaser would find the overall design of the D'892 Patent and SCRUB MOJI Sponge substantially similar and mistakenly purchase the SCRUB MOJI Sponge.  For example, the SCRUB MOJI Sponge is round and features a smile and eyes that are substantially similar to design claimed in the D'892 Patent.

63.     Upon information and belief, Smilyeez has known of the existence of the D'892 Patent and sponge because it had actual notice of the rights associated with product shape dating back to the March 12, 2023 cease and desist letter.

64.     As a result of Defendant's infringing activities, Plaintiff has lost sales and suffered actual damages.

**FIRST CAUSE OF ACTION**
**(Registered Trademark Infringement)**

65.     Plaintiff repeats and incorporates by reference each of the averments contained in paragraphs 1 through 64 of this complaint with the same force and effect.

66.     Plaintiff owns all rights, title, and interest in the DADDY-formative Marks, which it has used continuously in U.S. commerce since at least as early as 2007.

67.     Plaintiff has never authorized Defendant to market and/or offer goods or goods bearing the DADDY-formative Marks or confusingly similar marks.

68.     Defendant began its infringing use of Plaintiff's mark at least as early as October 16, 2021 when it adopted the DADDY HANDLE mark.

69.     Defendant continued its infringing use of Plaintiff's mark at least as early as June 9, 2023 when it adopted the SCRUB MOJI mark.

70.     Upon information and belief, Defendant's actions are willful and intentional with full knowledge of Plaintiff's prior rights in the DADDY-formative Marks.

71.     Defendant's unauthorized use in commerce of the DADDY HANDLE mark and SCRUB MOJI mark infringes on Plaintiff's rights in the DADDY-formative Marks and violates 15 U.S.C. § 1114 because it renders Defendant's goods confusingly similar to Plaintiff's DADDY-formative Marks and creates the erroneous impression in consumers' minds that Plaintiff's goods are approved, sponsored, endorsed, developed, or are licensed by, or are in some way affiliated with Defendant.

72.     Defendant's actions have caused actual confusion and will likely continue to lead consumers to incorrectly conclude that Plaintiff's goods originate from or somehow have become connected with Defendant, damaging both Plaintiff and the public.

73.     As a result of Defendant's trademark infringement, Plaintiff has suffered and will continue to suffer damages, including loss of income, profits, and goodwill.

74.     All of Defendant's aforementioned acts are "exceptional", and Plaintiff is entitled to treble damages and attorney's fees under 15 U.S.C. § 1117.

75.     Defendant's acts have caused irreparable damage and injury to Plaintiff and will continue to cause irreparable injury to Plaintiff unless Defendant is enjoined from further infringing upon Plaintiff's registered trademark.

76.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Maryland Common Law Unfair Competition)

77.     Plaintiff repeats and incorporates herein by reference each one of the averments contained in paragraphs 1 through 76 of this complaint with the same force and effect.

78.     Defendant's infringing use of the DADDY HANDLE mark and SCRUB MOJI marks in connection with its goods constitutes unfair competition.  Defendant's use of the marks is deceptive and misleading and is likely to cause further consumer confusion.

79.     Defendant has offered for sale and sold goods in association with trademarks and trade dress that are confusingly similar to Scrub Daddy's marks and trade dress.

80.     Defendant's conduct willfully disregards Plaintiff's valuable intellectual property rights in its DADDY-formative Marks, Smile Face Logo, and Smile Face Sponge.

81.     Defendant's acts have caused irreparable damage and injury to Plaintiff and will continue to cause irreparable injury to Plaintiff unless Defendant is enjoined from further infringing upon Plaintiff's trademarks.

82.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)

83.     Plaintiff repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 82 of this complaint with the same force and effect.

84.     Plaintiff first used the DADDY-formative Marks in commerce at least as early as 2007 prior to Defendant's adoption of its DADDY HANDLE and SCRUB MOJI marks.

85.     Plaintiff has invested considerable time, effort, and money in the DADDY-formative Marks over the past 16 years, resulting in established goodwill and reputation amongst

consumers.

86.     Plaintiff's DADDY HANDLE mark contains the distinctive "DADDY" in connection with its goods.

87.     Defendant's s SCRUB MOJI mark used in association with confusingly similar trade dress and design that includes a product shaped like Plaintiff's distinctive Smile Face Sponge, and Plaintiff's Smile Face Logo creates the misleading commercial impression that Defendant is associated with or sponsored by Plaintiff.

88.     Defendant's use of the DADDY HANDLE mark in connection with its Infringing Goods is confusingly similar to Plaintiff's DADDY-formative Marks and goods.

89.     Defendant's use of the SCRUB MOJI mark in connection with its Infringing Goods is confusingly similar to Plaintiff's Smile Face Sponge and goods.

90.     Defendant was aware of Plaintiff's DADDY-formative Marks at the time it adopted the DADDY HANDLE mark and SCRUB MOJI mark, and Defendant was aware that consumer confusion was probable as a result of its branding.

91.     Defendant was aware of Plaintiff's Smile Face Sponge at the time it adopted the SCRUB MOJI Sponge, and Defendant was aware that consumer confusion was probable as a result of its branding efforts.

92.     Defendant's use of the DADDY HANDLE mark, the SCRUB MOJI mark, and the SCRUB MOJI Sponge is without the permission, consent, or authorization of Plaintiff.

93.     Defendant's acts have caused irreparable damage and injury to Plaintiff, which will likely continue unless Defendant is enjoined from further infringing upon Plaintiff's trademarks.

94.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Federal Unfair Competition and False Designation of Origin)

95.     Plaintiff repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 94 of this complaint with the same force and effect.

96.     This cause of action is for unfair competition under the Lanham Act of the United States, including 15 U.S.C. §§ 1051 and 1125.

97.      Defendant has without consent or permission from Plaintiff, marketed products utilizing indicia likely to confuse persons in the marketplace into believing that its products are products of Plaintiff.

**Smilyeez's Infringing Trade Dress**

98.     Plaintiff's Smile Face Sponge is distinctive, has been used throughout the United States and elsewhere, and is well known to distributors in the trade and relevant consumers.

99.     Prior to Defendant's conduct that forms the basis for this Complaint, consumers had come to associate the distinctive feel and appearance of the Smile Face Sponge with Plaintiff's products.

100.    Through its promotional efforts, business conduct, and continuous use of the Smile Face Sponge and its associated trade dress, Plaintiff has developed and maintained clients throughout the United States, including in Maryland.  Through its widespread and favorable acceptance and recognition by the consuming public, the Smile Face Sponge has become an asset of substantial value as a symbol of Plaintiff, its high quality products, and its goodwill.

101.    Accordingly, Plaintiff has established valid and enforceable rights in the distinctive feel and appearance of the Smile Face Sponge.

102.    Plaintiff and Defendant offer their respective products to customers through the same trade channels throughout the United States.

18

103.    Defendant is a direct competitor of Plaintiff.

104.    Despite Plaintiff's preexisting valid and enforceable rights in the Smile Face Sponge, Defendant, without permission or approval, began using its Infringing Trade Dress on its website and via online retailers to offer and sell its products in the United States, including in Maryland.

105.    As such, Defendant, in connection with its activities, has improperly and unlawfully utilized the distinctive trade dress, trademark, and appearance design which Plaintiff has previously adopted and used, and which identify Plaintiff's goods, thereby creating a likelihood of confusion in the minds of the purchasing public, as well as in the minds of those in the trade.

106.    This advertising, labeling, and statements are false and misleading in all material respects, done intentionally, wrongfully and without justification or privilege, resulting in the immediate and irreparable harm to the Plaintiff.

107.    Defendant is deliberately attempting to trade upon the goodwill previously acquired by Plaintiff as a result of Plaintiff's diligent efforts.

108.    Unless such activities are enjoined, Defendant's actions are likely to mislead and confuse the purchasing public and will cause the continued mistaken purchase and use of Defendant's product in the incorrect belief that it originates with, or is sponsored by, Plaintiff.

109.    Defendant infringed and continues to infringe upon Plaintiff's trade dress by unlawfully appropriating the image of Plaintiff's business in violation of 15 U.S.C. § 1125(a).

110.    Defendant's trade dress infringement has irreparably harmed and continues to harm Plaintiff.  Plaintiff has no adequate remedy at law for the harm caused by the Defendant.

111.    By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone associated therewith, to restrain further acts of unfair competition and

trade dress infringement, and to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of unfair competition and trade dress infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Defendant.

**False Designation of Origin**

112.    Defendants' distribution, sale, and offering for sale, of identical and related goods that are confusingly similar to the Smile Face Sponge constitutes false designation of origin or sponsorship of such goods and tends falsely to represent that Defendants' goods and goods originate from Scrub Daddy or that said goods have been sponsored, approved, authorized or licensed by Scrub Daddy or are in some way affiliated or connected with Scrub Daddy.

113.    Defendants' conduct is likely to confuse, mislead, and deceive an appreciable number of distributors in the trade, relevant consumers and other purchasers, and members of the public as to the origin of the goods and goods or to cause said persons to believe that the goods have been sponsored, approved, authorized or licensed by Scrub Daddy or are in some way affiliated with Scrub Daddy all in violation of 15 U.S.C.A. § 1125(a).

**Sixth CAUSE OF ACTION**
**(Design Patent Infringement)**

114.    Plaintiff repeats and incorporates herein by reference each of the averments contained in paragraphs 1 through 113 of this complaint with the same force and effect.

115.     Smilyeez has been and is infringing the D'892 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the SCRUB MOJI Sponge in violation of 35 U.S.C. § 271(a).

116.    Smilyeez's infringement has been, and continues to be knowing, intentional, and willful.  This case is exceptional and, therefore, Scrub Daddy is entitled to an award of attorney

20

fees pursuant to 35 U.S.C. § 285.

117.    Smilyeez's acts of infringement of the D'892 Patent have caused and will continue to cause Scrub Daddy damages for which Scrub Daddy is entitled to compensation pursuant to 35 U.S.C. §§ 284 or 289.

118.    Smilyeez's acts of infringement of the D'892 Patent have caused and will continue to cause Scrub Daddy immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  Scrub Daddy has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in its favor against Defendant as follows:

A.    An injunction permanently enjoining and restraining Defendant, its agents, servants, employees, successors, assigns, subsidiaries, related companies, parent companies, licensees, and all persons in active concert of participation with them:

1.    From marketing, offering, selling or distributing goods bearing the marks DADDY HANDLE, SCRUB MOJI or any confusingly similar variation(s) thereof;

2.    From engaging in deceptive trade practices or acts in the conduct of Defendant's business by means of offering goods in association with the marks DADDY HANDLE or SCRUB MOJI

3.    From imitating, copying, using, reproducing, registering, attempting to register, goods which colorably imitates or is confusingly similar to the distinctive feel and appearance of the Smile Face Sponge.

B.    Directing Defendant to remove all references to DADDY HANDLE, SCRUB MOJI and/or any confusingly similar variation(s) thereof contained in any advertising and/or

marketing materials published by Defendant, including any and all social media posts.

C.      Directing Defendant to publish corrective advertising to correct the consumer confusion caused by Defendant's infringing use of the marks DADDY HANDLE, SCRUB MOJI, and the SCRUB MOJI Sponge.

D.      Directing Defendant to account to Plaintiff all profits resulting from Defendant's use of the DADDY HANDLE, SCRUB MOJI, and the SCRUB MOJI Sponge, and/or any confusingly similar variation(s) thereof.

E.      Awarding Plaintiff its damages from Defendant's unlawful and wrongful acts.

F.      Awarding Plaintiff three (3) times the amount of Plaintiff's damages or Defendant's profits, whichever is greater.

G.      Awarding Plaintiff the cost and expenses incurred in connection with this action, as well as its reasonable attorneys' fees.

H.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Date: January 17, 2024                `           Respectfully Submitted, Gerben

                                                  Perrott, PLLC
                                                  *Attorneys for Scrub Daddy, Inc.*
                                                  1050 Connecticut Ave NW Suite 500
                                                  Washington, DC 20036
                                                  Tel.: 202-579-0727


                                                  By: /s/ Kathryn Kent Kathryn G.
                                                     Kent, Esq. * *Lead Counsel*
                                                     VT #4455
                                                     kkent@gerbenlawfirm.com

Sophie Edbrooke, Esq.
MD #30759
sedbrooke@gerbenlawfirm.com

Michael Tier, Esq.*
PA #326535
mtier@gerbenlawfirm.com

*pro hac vice admission pending